IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------------- x
*In re:*                                                    :    **Chapter 11**
                                                            :
**ESSAR STEEL MINNESOTA LLC and**                           :    **Case No. 16-11626 (BLS)**
**ESML HOLDINGS INC.**[1]                                   :
                                                            :    **(Jointly Administered)**
    **Reorganized Debtors.**             :
-------------------------------------------------------------------- x
**MESABI METALLICS COMPANY LLC (F/K/A**                     :
**ESSAR STEEL MINNESOTA LLC),**                             :    **Adv. Proc. No. 17-51210 (BLS)**
                                                            :
    **Plaintiff and Appellant,**         :
                                                            :
      **v.**                   :
                                                            :
**CLEVELAND-CLIFFS INC. (F/K/A CLIFFS**                     :
**NATURAL RESOURCES INC.); CLEVELAND-**                     :
**CLIFFS MINNESOTA LAND DEVELOPMENT**                       :
**LLC; GLACIER PARK IRON ORE PROPERTIES**                   :
**LLC; and DOES 1-10,**                                     :
                                                            :
    **Defendants and Appellees.**        :
-------------------------------------------------------------------- 
**GLACIER PARK IRON ORE PROPERTIES LLC,**                   :
                                                            :
    **Counterclaim-Plaintiff and Appellee,**  :
                                                            :
      **v.**                   :
                                                            :
**MESABI METALLICS COMPANY LLC,**                           :
                                                            :
    **Counterclaim-Defendant and Appellant.**  :
-------------------------------------------------------------------- 
**CLEVELAND-CLIFFS INC., et al.,**                          :    **Appeal from the United States**
                                                            :    **Bankruptcy Court for the District of**
    **Counterclaim-Plaintiffs and Appellees,**  :    **Delaware**
                                                            :
      **v.**                   :    **Civil Action No. 18-mc-00261-LPS**
                                                            :
**MESABI METALLICS COMPANY LLC, et al.,**                   :
                                                            :
    **Counterclaim-Defendants and Appellants.**  :
-------------------------------------------------------------------- 

---

[1]    Essar Steel Minnesota LLC has changed its name to Mesabi Metallics Company LLC.

**APPELLEES' RESPONSE IN OPPOSITION TO APPELLANT'S MOTION FOR
LEAVE TO FILE INTERLOCUTORY APPEAL OF BANKRUPTCY COURT'S ORDER
GRANTING APPELLEES' MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND
DENYING APPELLANT'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT**

M. Blake Cleary (No. 3614)
Michael S. Neiburg (No. 5275)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:   (302) 571-1253
Email:   mbcleary@ycst.com
          mneiburg@ycst.com

          -and-

Robert S. Faxon  (pro hac vice pending)
Thomas Wearsch  (pro hac vice pending)
Kristin S.M. Morrison  (pro hac vice pending)
Adam J. Joines  (pro hac vice pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  +1.216.586.3939
Facsimile:  +1.216.579.0212
E-mail:  rfaxon@jonesday.com
          twearsch@jonesday.com
          kmorrison@jonesday.com
          ajoines@jonesday.com

*Attorneys for Cleveland-Cliffs Inc. and
Cleveland-Cliffs Minnesota Land Development LLC*

Dated:  September 12, 2018

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     THE FACTUAL RECORD AND PROCEDURAL HISTORY ....................................... 2

      A.      Mesabi chose to litigate its rights in the Mineral Leases as part of an
           adversary proceeding that would not be finally resolved until well after
           the fate of its reorganization was known .............................................................. 2

      B.      The parties each presented early motions for partial summary judgment
           on the ground that Judge Shannon could rule on the unambiguous contracts
           as a matter of law now, limiting the remaining issues ........................................ 6

      C.      Judge Shannon agreed that the contracts at issue are unambiguous and
           made a definitive ruling that Mesabi has no rights in the Mineral Leases............ 7

III.    ARGUMENT........................................................................................... 8

      A.      Interlocutory review is disfavored, and the legal standard is high ...................... 8

      B.      Mesabi has not met the requirements for appellate review.................................. 9

           1.      Even if contract interpretation is a controlling question of law,
                 Mesabi misstates the grounds for Judge Shannon's Opinion and
                 what will be presented on appeal. ....................................................... 9

           2.      There is no substantial ground for difference of opinion because
                 Judge Shannon's analysis followed well-established principles of
                 contract interpretation.......................................................................... 10

           3.      Mesabi does not seek to materially advance the termination of the
                 litigation, which would be advanced only by staying the course that
                 the parties charted: using Judge Shannon's Opinion to guide the
                 remaining issues in the adversary proceeding. ......................................... 13

           4.      Mesabi has not shown that exceptional circumstances warrant
                 granting leave for an interlocutory appeal now......................................... 14

      C.      Even if Mesabi met the requirements—and it has not—leave to appeal
           should be denied because Mesabi's stated grounds for appeal have been
           waived .......................................................................................... 16

IV.     CONCLUSION....................................................................................... 20

01:23627823.1

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

Amba v. Rupari Food Services, Inc.,
No. 10-4603, 2016 WL 398167 (D. N.J. Feb. 1, 2016) ..........................................19

Catskill Dev., L.L.C. v. Park Place Entm't Corp.,
206 F.R.D. 78 (S.D.N.Y. 2002) .....................................................................9

EMSI Acquisition, Inc. v. RSUI Indemnity Co.,
No. 16-1046, 2018 WL 2316633 (D. Del. May 22, 2018) ................................11, 12

Fed.–Mogul Corp. v. Ins. Co. of Pa.,
No. 12-12005, 2015 WL 13037139 (E.D. Mich. Dec. 22, 2015) ...........................11

Fox v. Horn,
No. 98–5279, 2000 WL 288388 (E.D. Pa. Mar. 13, 2000)......................................8

Glover v. Udren,
No. 08-990, 2011 WL 3290238 (W.D. Pa. June 30, 2011),
report and recommendation adopted, 2011 WL 3298527
(W.D. Pa. Aug. 1, 2011) .............................................................................9

Great Am. Ins. Co. of N.Y. v. Int'l Custom Prods., Inc.,
No. 3:09-124, 2011 WL 7037123 (W.D. Pa. Oct. 31, 2011)....................................9

In re AE Liquidation, Inc.,
451 B.R. 343 (D. Del. 2011).............................................................8, 9, 11, 13, 20

In re ASHINC Corp.,
No. 12–11564, 2017 WL 2774736 (D. Del. June 27, 2017)....................................9

In re Balser,
No. 11-12203-RWZ, 2012 WL 4888530 (D. Mass. Oct. 15, 2012) .......................17

In re Corio,
371 F. App'x 352 (3d Cir. 2010) ...................................................................17

In re Del. & Hudson Ry. Co.,
96 B.R. 469 (D. Del.), aff'd, 884 F.2d 1383 (3d Cir. 1989) ..................................14

In re Dura Automotive Sys., Inc.,
No. 09-69-SLR, 2010 WL 180249 (D. Del. Jan. 19, 2010)......................................12

In re Greenfield Energy Servs., Inc.,
No. 16-208-LPS, 2017 WL 6524525 (D. Del. Dec. 21, 2017) ..........................................11, 13

In re Kaiser Group Intern., Inc.,
400 B.R. 140 (D. Del. 2009)......................................................................................8

In re Physiotherapy Holdings, Inc.,
No. 16-201-LPS, 2017 WL 6524524 (D. Del. Dec. 21, 2017) ..........................................10, 11

In re Resorts Int'l, Inc.,
372 F.3d 154 (3d Cir. 2004)....................................................................................15

In re Shenango Grp. Inc.,
501 F.3d 338 (3d Cir. 2007)....................................................................................12

In re Trade Secret, Inc.,
Nos. 12-854-LPS, 13-291-LPS, 2014 WL 3362322 (D. Del. July 7, 2014),
aff'd sub nom., 609 Fed. App'x 98 (3d Cir. 2015) ...................................................12

In re WL Homes LLC,
476 B.R. 830 (D. Del. 2012), aff'd in part sub nom.,
534 F. App'x 165 (3d Cir. 2013) ...........................................................................17

In re Yormak,
No. 2:17-CV-73-FTM-38, 2017 WL 2645601 (M.D. Fla. June 19, 2017),
appeal dismissed, No. 17-13239-FF, 2017 WL 4857438
(11th Cir. Sept. 13, 2017)................................................................................17, 19

Katz v. Carte Blanche Corp.,
496 F.2d 747 (3d Cir. 1974)......................................................................................8

Manuel v. NRA Grp. LLC,
722 F. App'x 141 (3d Cir. 2018) ............................................................................17

Matter of Magic Restaurants, Inc.,
202 B.R. 24 (D. Del. 1996)......................................................................................14

Merrill v. Briggs & Stratton Corp.,
No. 10–CV–00700, 2012 WL 663819 (E.D. Wis. Feb. 29, 2012) ...........................9

<u>Pacor v. Higgins</u>,
    743 F.2d 984 (3d Cir. 1984)...................................................................................13

<u>Sanofi-Aventis U.S., LLC v. Great Am. Lines, Inc.</u>,
    718 F. App'x 110 (3d Cir. 2017) ..........................................................................17

<u>United States v. Slade</u>,
    980 F.2d 27 (1st Cir. 1992)....................................................................................18

**STATUTES**

28 U.S.C. § 158...........................................................................................................17

28 U.S.C. § 158(a)(3)................................................................................................1, 8

28 U.S.C. § 1292(b) ....................................................................................9, 10, 11, 13

**OTHER AUTHORITIES**

19 <u>Moore's Federal Practice – Civil</u> § 203.31[2] (2018) ...........................................10

Defendants Cleveland-Cliffs Inc. ("Cliffs") and Cleveland-Cliffs Minnesota Land

Development LLC ("Cliffs Minnesota") (collectively, the "Cliffs Defendants") respond to

Plaintiff Mesabi Metallics Company LLC's ("Mesabi") Motion for Leave to File Interlocutory

Appeal of Bankruptcy Court's Order Granting Defendants' Motions for Partial Summary

Judgment and Denying Mesabi's Cross Motion for Partial Summary Judgment ("Mesabi's

Motion") [D.I. 1], as follows:

## I.     PRELIMINARY STATEMENT

1.      Mesabi's request for interlocutory appeal of Judge Shannon's July 23, 2018

Opinion should be denied.  This is not an appeal critical to Mesabi's reorganization—in fact, its

Chapter 11 plan went effective nine months ago, and Mesabi thus completed its reorganization

on the very day that it added the claims at issue to this adversary proceeding.  Rather, Mesabi

simply wants special treatment for a run-of-the-mill post-confirmation civil action.

2.      Interlocutory bankruptcy appeals are not to be granted lightly in this Circuit.  See

infra Section III.A.  Mesabi includes traditional buzz words in its Motion, including assertions of

clear legal error, negative impacts on reorganization, and risk of mooting if the issue is not

resolved quickly.  These concerns are unsupported by the record, however, and Mesabi fails to

meet the exacting standards required for interlocutory appeal under § 158(a)(3).  Mesabi should

not be allowed to pursue a piecemeal appeal of the issues presented in its adversary proceeding.

3.      Judge Shannon's Opinion, which interpreted his own order approving contracts

that amended the Mineral Leases, is clear and well-reasoned.  There are no grounds for a

substantial disagreement with Judge Shannon's rejection of Mesabi's arguments.  See Sections

III.B.1 & 2.  Allowing Mesabi to pursue a piecemeal appeal would only delay final resolution,

not materially advance the outcome of the litigation.  See Section III.B.3.  And Mesabi's asserted

"exceptional circumstances" do not support an appeal now, as it would not gain any more

certainty concerning its rights in the Mineral Leases by succeeding on the grounds it puts

forward for appeal.  See Section III.B.4.  Even if leave were granted, Mesabi's requested appeal

relies on ambiguity arguments that were waived when Mesabi failed to make them to Judge

Shannon.  See Section III.C.  In short, none of the factors necessary to support leave to appeal

are present here.

4.      Mesabi knew the risks when it entered into the contracts affecting its Mineral

Leases.  Mesabi also knew that Judge Shannon might decide one or more issues against it when

it sought to pursue its interpretation of those contracts in this adversary proceeding, including on

early cross-motions for partial summary judgment.  There is no reason to allow Mesabi to pursue

an interlocutory appeal now that Judge Shannon has granted partial summary judgment against

it, and Mesabi's Motion should be denied.

## II.      THE FACTUAL RECORD AND PROCEDURAL HISTORY

**A.      Mesabi chose to litigate its rights in the Mineral Leases as part of an adversary proceeding that would not be finally resolved until well after the fate of its reorganization was known.**

5.      This appeal stems from an adversary proceeding that Mesabi filed on September

7, 2017, in the Bankruptcy Court for the District of Delaware before Judge Brendan Shannon.

Mesabi, at the time named Essar Steel Minnesota LLC ("Essar"), filed for Chapter 11 bankruptcy

on July 8, 2016 to prevent its lessors from retaking mineral interests on grounds that Mesabi

failed to perform under its leases.  (See In re Essar Steel Minnesota LLC, Case No. 16-11626

(Bankr. D. Del.) ("Bankruptcy Proceeding"); Voluntary Petition of ESML Holdings Inc., id.,

Bankr. D.I. 1;[2] Decl. of Sanjay Bhartia, in Supp. of Debtors' First Day Pleadings, ¶ 13, id.,

Bankr. D.I. 14 ("[T]he potential termination of these mineral leases—the core source of supply

---

[2]      References to [Bankr. D.I. XX] are to the docket in the main Bankruptcy Proceeding.  References to [Adv. D.I. XX] are to the docket in this adversary action.

of raw material for operation of the Facility—provided an impetus for the Debtors' filing of the Chapter 11 Cases.").)

6.　　Glacier Park Iron Ore Properties LLC ("GPIOP") and Superior Mineral Resources, LLC ("Superior") each had mineral leases with Essar at the time that it filed for bankruptcy.  These leases pertained to mineral land parcels that GPIOP and Superior held in fee jointly as co-tenants, each with an undivided 50% interest in the whole (the "MSI BLGN Indenture of Lease") and to mineral land parcels that GPIOP owned 100% in fee (the "MSI 100% Indenture of Lease") and 50% in fee (the "MSI 50% Indenture of Lease") (collectively the "Mineral Leases").

7.　　On August 28, 2017, (a) Mesabi, (b) Mesabi's plan sponsor Chippewa Capital Partners, LLC, (c) GPIOP, and (d) Superior entered into a settlement governing the proposed assumption of the Mineral Leases, which the Debtors submitted to Judge Shannon for approval on August 29, 2017 (the "Settlement Agreement").  On August 30, 2017, Judge Shannon entered an order approving "all of the[] terms and conditions" of the Settlement Agreement" (the "Approval Order").  (See [Bankr. D.I. 1168] (Approval Order and Settlement Agreement).)

8.　　The Settlement Agreement was "a comprehensive settlement agreement that was intended to resolve the dispute regarding assumption of the [Mineral] Leases."  (Op. at 5 [Bankr. D.I. 1541; Adv. D.I. 98].)  Through it, Mesabi was granted an extension from August 31, 2017 to October 31, 2017 to assume the Mineral Leases.  Assumption, however, was specifically "contingent on the Plan going effective no later than October 31, 2017."  (Id.; see Settlement Agreement § 3(b) [Bankr. D.I. 1168-1].)  The Settlement Agreement further provided that if the Effective Date did not occur by October 31, 2017, "the mineral leases will be automatically rejected . . . and revert to GPIOP and Superior, as applicable, without further Bankruptcy Court

proceedings." (See Settlement Agreement. § 3(d).)  The Settlement Agreement provided that after rejection and reversion, "GPIOP and Superior, as applicable, may take any action with respect to the Mineral Leases and the leased properties and interests and such actions will not constitute a violation of the automatic stay or any other provision of the Bankruptcy Code." (Id.) The interpretation of the Settlement Agreement is the focus of Mesabi's Appeal.

9.     The October 31 deadline came and went without the occurrence of the Effective Date.  Mesabi could not assume the Mineral Leases, and likewise failed to secure another extension or otherwise seek any clarification of its remaining rights in the Mineral Leases. Immediately after Mesabi failed to meet this deadline, GPIOP was free to "take any action with respect to the Mineral Leases and the leased properties and interests and such actions w[ould] not constitute a violation of the automatic stay or any other provisions of the Bankruptcy Code." (See Settlement Agreement § 3(d).)

10.     Six weeks after the October 31 Settlement Agreement deadline, on December 11, 2017, Cliffs announced that its affiliate, Cliffs Minnesota, had acquired GPIOP's properties that had formerly been leased by GPIOP to Essar.  See Press Release, Cleveland-Cliffs Inc., Cleveland-Cliffs Inc. Announces Acquisition of Real Estate Interests in Itasca County, Minnesota (Dec. 11, 2017), http://www.clevelandcliffs.com/English/news-center/news-releases/news-releases-details/2017/Cleveland-Cliffs-Inc-Announces-Acquisition-of-Real-Estate-Interests-in-Itasca-County-Minnesota/default.aspx; see also 2d Amended Compl. ¶ 87 [Bankruptcy Proceeding, Adv. Proc. No. 17-51210, Adv. D.I. 18].

11.     The Debtors went effective and emerged from reorganization on December 22, 2017.  [Bankr. D.I. 1398.]

12.     Less than two hours prior to filing the Notice of Effective Date on December 22, 2017, the Reorganized Debtors (i.e., Mesabi) filed a Motion For Leave to Amend their Complaint.  [Adv. D.I. 8.]  In the Second Amended Complaint, Mesabi added GPIOP and Cliffs Minnesota as defendants and added 15 additional claims for relief based on new factual allegations related to GPIOP's transfer of its property interests to Cliffs Minnesota.

13.     On January 9, 2018, Cliffs filed an objection to the Motion for Leave to Amend on the grounds of bad faith and futility of amendment, arguing that the new causes of action pertaining to GPIOP's transfer of the Mineral Leases to Cliffs Minnesota were not supported under a proper interpretation of the Settlement Agreement.  [Adv. D.I. 10.]  During the January 18, 2018 hearing concerning its Motion for Leave to Amend, Mesabi invited Judge Shannon to make a determination as to its rights under the Settlement Agreement:

> Cliffs has asked this Court to determine whether or not the leases are in effect. They filed 37 pages and 67 pages of exhibits and they asked the Court to decide that**.  We agree.  We think the Court should decide today or as soon as practicable whether or not the leases are in effect.**  We don't think they were terminated.  We think -- we agree that they were rejected, and as we go through the argument we'll point out the rejection is just a breach and the cure provisions and what the lease provisions have.  **But the documents that the Court now has in front of it can decide right there based on this Court's order [the Approval Order], based on the documents that are attached to this Court's order [the Settlement Agreement], and based on the leases themselves [Mineral Leases] this Court can make that determination**.

[Jan. 18, 2018 Hr'g Tr. at 17:5-19 [Adv. D.I. 48-1] (emphases added).]

14.     On January 23, 2018, Judge Shannon granted the Motion for Leave to Amend but acknowledged that the arguments presented on the parties' competing constructions of the Settlement Agreement may be appropriate for summary judgment.  [Adv. D.I. 17.]  Judge Shannon explained that, rather than deciding the issue on a motion for leave to amend, it would be more appropriate to do so "in the context of cross-motions for summary judgment."  [Id. at

¶ 8.]  On January 23, 2018, Mesabi filed the Second Amended Complaint.  [Adv. D.I. 18.]

      **B.**      **The parties each presented early motions for partial summary judgment
on the ground that Judge Shannon could rule on the unambiguous contracts
as a matter of law now, limiting the remaining issues.**

      15.      On February 26, 2018, GPIOP filed a Motion for Partial Summary Judgment in its
favor.  [Adv. D.I. 31; Adv. D.I. 33.]

      16.      On March 28, 2018, Mesabi filed an opposition to GPIOP's Motion for Partial
Summary Judgment and a Cross-Motion for Partial Summary Judgment in its favor.  [Adv. D.I.
49.]  In its Cross-Motion for Partial Summary Judgment, Mesabi argued that the Mineral Leases
were rejected—but not terminated—after Mesabi failed to go effective by October 31, 2017
because GPIOP never took any additional steps to terminate the Mineral Leases.  Mesabi argued
that when the Plan went effective on December 22, 2017, the unambiguous language of the
Approval Order and Settlement Agreement provided that the rejected Leases were assumed and
all pre-assumption defaults were waived.  [Adv. D.I. 51.]

      17.      On March 28, 2018, the Cliffs Defendants filed a Motion for Partial Summary
Judgment in their favor.  [Adv. D.I. 46.]  In their Motion, the Cliffs Defendants argued that the
Settlement Agreement provided that Mesabi only had the right to assume the Mineral Leases if
its Plan became effective by October 31, 2017.  When the Plan did not go effective by that date,
the Settlement Agreement clearly provided that the Mineral Leases were rejected and reverted to
GPIOP.  [Adv. D.I. 47.]

      18.      Mesabi filed responses to each of GPIOP's and the Cliffs Defendants' Motions
[Adv. D.I. 51, 73], and a reply in support of its own Cross Motion [Adv. D.I. 82].  GPIOP and
the Cliffs Defendants' each filed responses to Mesabi's Cross Motion [Adv. D.I. 67, 72], and the
Cliffs Defendants filed a reply in support of their Motion [Adv. D.I. 81].  On May 10, 2018,
Mesabi filed a Notice of Completion of Briefing in advance of the May 15, 2018 oral argument

on the parties' Cross Motions.  [Adv. D.I. 86.]  No party asked Judge Shannon to deny partial

summary judgment to any other party on the grounds that there was a material fact in dispute.

Instead, each party, including Mesabi, informed Judge Shannon that the issue of the status of

Mesabi's rights to the Mineral Leases was ripe for decision as a matter of law.[3]

> **C.  Judge Shannon agreed that the contracts at issue are unambiguous and made a definitive ruling that Mesabi has no rights in the Mineral Leases.**

19.     On July 23, 2018, Judge Shannon issued his Opinion on the Cross Motions for

Partial Summary Judgment.  [Adv. D.I. 98 (the "Opinion").]  Judge Shannon agreed with the

Cliffs Defendants' and GPIOP's construction of the Settlement Agreement, specifically that the

Settlement Agreement is clear that the October 31, 2017 date was a material condition precedent

to assumption.  (Op. at 12.)  Judge Shannon explained that "[w]hen November 1 arrived without

Mesabi going effective, the [Mineral ]Leases were rejected, reverted to GPIOP, and GPIOP

could take 'any action' thereafter, as provided for in the Settlement Agreement."  (Id. (citing

Settlement Agreement § 3(d)).)  Judge Shannon reasoned that the parties' intent was abundantly

clear and the parties had negotiated for a date certain by which the rights and obligations would

be determined.  (Id. at 12–15.)  Consequently, "the Court will not permit the parties to evade or

alter the plain consequences of what they bargained for in their Agreement."  (Id. at 16.)

---

[3]     (See, e.g., [Adv. D.I. 51 at 5 ("Based on the plain text of the Parties' agreements, and as further set forth herein, GPIOP's motion must be denied and Mesabi's cross-motion granted.")]; [Adv. D.I. 73 at 1 ("Even if the Cliffs Parties' interpretation of the relevant documents were compelling (it isn't), the reasonableness of Plaintiff's interpretation precludes the relief they seek."); id. ¶ 24 ("Each of the Subject Counts turns on whether Plaintiff is entitled to the benefits of the Mineral Leases, as Plaintiff contends, or whether they were irrevocably terminated as of November 1, 2017, as the Cliffs Parties contend.  For the reasons that follow, the Cliffs MSJ must be denied.  For the same reasons, the GPIOP MSJ must also be denied and the Mesabi MSJ must be granted."); id. ¶ 50 ("The terms of the [Approval] Order are clear and unambiguous and no further inquiry into the parties' intent is required or permitted.  The Cliffs Parties must be denied summary judgment on the Subject Counts.")]; [Adv. D.I. 82 ¶ 14 ("There is only one plain language reading of the [Approval] Order, and that is that the Mineral Leases were assumed by consent on the Effective Date of the Plan.  Any conflict with the Settlement Agreement is resolved by both Minnesota contract law and Forklift LP: the terms of the [Approval] Order must control."); id. ¶ 39 ("Both GPIOP and the Cliffs Parties have asserted that the plain text of the Settlement Agreement unambiguously entitles them to the relief they request.")].)

20.     On August 15, 2018, Judge Shannon entered an Order consistent with his

Opinion, rendering judgment in the Defendants' favor on Mesabi's Third, Fourth, Sixth,

Thirteenth, Fourteenth, Sixteenth, Twentieth, Twenty-First, Twenty-Second, Twenty-Third, and

Twenty-Fourth Claims for Relief in the Second Amended Complaint.  [Adv. D.I. 104.]  That

Order and the underlying reasons set forth in the Opinion are the subject of this appeal.

## III.     ARGUMENT

### A.     Interlocutory review is disfavored, and the legal standard is high.

21.     This Court has discretion to grant or deny leave to parties to appeal interlocutory

orders from a bankruptcy court, 28 U.S.C. § 158(a)(3), but "certification of an interlocutory

appeal is granted sparingly and only in exceptional circumstances."  In re Kaiser Group Intern.,

Inc., 400 B.R. 140, 145 (D. Del. 2009).  Although § 158(a) does not specify the standard courts

should use to exercise this discretion, this Court "follow[s] the standards set forth under 28

U.S.C. § 1292(b)."  In re AE Liquidation, Inc., 451 B.R. 343, 346 (D. Del. 2011) (Stark, J.).

Under § 1292(b), an interlocutory appeal is permitted only when it "(1) involves a controlling

question of law upon which there is (2) substantial grounds for a difference of opinion as to its

correctness, and (3) if appealed immediately, may materially advance the ultimate termination of

the litigation." Id. (citing 28 U.S.C. § 1292(b)).  The Third Circuit requires that before an order

can be certified for interlocutory appeal, "all three factors identified in the statute must be

satisfied." Fox v. Horn, No. 98–5279, 2000 WL 288388, at *1 (E.D. Pa. Mar. 13, 2000)

(denying motion for certification of appeal and citing Katz v. Carte Blanche Corp., 496 F.2d 747,

754 (3d Cir. 1974)); see also In re Kaiser, 400 B.R. at 145.

22.     In addition to proving all three factors from § 1292(b), the party seeking leave to

appeal must also establish that "exceptional circumstances justify a departure from the basic

policy of postponing review until after the entry of final judgment."  In re AE Liquidation, 451

B.R. at 346.  This additional hurdle is necessary because "piecemeal litigation is generally disfavored by the Third Circuit." Id. (citations omitted); see also In re ASHINC Corp., No. 12–11564, 2017 WL 2774736, at *3 (D. Del. June 27, 2017).

23.     Even if Mesabi could demonstrate that the § 1292(b) criteria are met—and it cannot—the Court still has discretion to deny leave to appeal for "entirely unrelated reasons" such as "the desire to have a full record before considering the disputed legal issue." Id.

24.     Here, far from meeting all of these requirements, Mesabi meets none.

**B.      Mesabi has not met the requirements for appellate review.**

**1.      Even if contract interpretation is a controlling question of law, Mesabi misstates the grounds for Judge Shannon's Opinion and what will be presented on appeal.**

25.     Interlocutory review is not appropriate in every case involving questions of contract interpretation, as "Section 1292(b) was not designed to secure appellate review of factual matters or of the application of the acknowledged law to the facts of a particular case." Great Am. Ins. Co. of N.Y. v. Int'l Custom Prods., Inc., No. 3:09–124, 2011 WL 7037123, at *4 (W.D. Pa. Oct. 31, 2011) (denying motion for interlocutory appeal) (internal quotation marks omitted).  Courts in this Circuit and others recognize that "§ 1292(b) was not designed to secure interlocutory appellate review of the Court's interpretation of unambiguous contractual provisions." Id.[4]  "[T]he question of the meaning of a contract, although technically a question of law when there is no other evidence but the written contract itself, is not what the framers of

---

[4]     See also, e.g., Merrill v. Briggs & Stratton Corp., No. 10–CV–00700, 2012 WL 663819, at *1 (E.D. Wis. Feb. 29, 2012) ("Certification [under § 1292(b)] is not appropriate where the question involves only the routine application of well-settled legal standards to uncontested facts" and "the interpretation of a contract, though technically a question of law, is not normally the kind of question referred to in § 1292(b)"); Glover v. Udren, No. 08–990, 2011 WL 3290238, at *2 (W.D. Pa. June 30, 2011) (denying motion for certification to appeal decision "regarding the parties' contractual responsibilities involv[ing] the interplay of facts and law" because "Section 1292(b) was not designed to secure appellate review of factual matters or of the application of the acknowledged law to the facts of a particular case"), R. & R. adopted, 2011 WL 3298527 (W.D. Pa. Aug. 1, 2011); Catskill Dev., L.L.C. v. Park Place Entm't Corp., 206 F.R.D. 78, 94 (S.D.N.Y. 2002) ("Differences over contract construction are not the sort of 'controlling question of law' that normally gives rise to interlocutory certification.").

§ 1292(b) had in mind."  19 <u>Moore's Federal Practice – Civil</u> § 203.31[2] (2018).  Interlocutory

appeals are to be reserved "for abstract legal issues that can be decided quickly and cleanly

without having to study the record."  <u>Id.</u>

26.    Judge Shannon's interpretation of the Settlement Agreement is not the type of

"abstract legal issue" subject to interlocutory review.  Mesabi now is asking this Court to allow it

to argue that the contract at issue, in the context of Mesabi's larger bankruptcy proceeding and

reorganization efforts, presents ambiguous provisions that cannot be reconciled.  (<u>See</u> Mot.

¶¶ 11, 14-18, 33-35, 39-40.)  But Mesabi, as did the Cliffs Defendants and GPIOP, repeatedly

asked Judge Shannon to find that the contracts at issue were **un**ambiguous and that its respective

interpretation was the only reasonable one for the court to adopt—no one argued otherwise.  (<u>See</u>

<u>infra</u> Section III.C.)  Mesabi acknowledges as much in its Motion.  (<u>See</u> Mot. ¶ 20 (summarizing

parties' arguments, stating its argument was based on "the plain language of the Settlement

Agreement and the Approval Order").)  This analysis, while novel, is not a discrete question of

law for which an interlocutory appeal may be proper.

**2.    There is no substantial ground for difference of opinion
because Judge Shannon's analysis followed well-established
<u>principles of contract interpretation.</u>**

27.    Mesabi cannot satisfy the second required prong of § 1292(b), which requires the

would-be-appellant to show that there is a "genuine doubt <u>as to the correct</u> legal standard."  <u>In re</u>

<u>Physiotherapy Holdings, Inc.</u>, No. 16-201-LPS, 2017 WL 6524524, at *6 (D. Del. Dec. 21, 2017)

(emphasis added; internal quotation marks omitted).  There is no doubt that Judge Shannon

identified and applied the correct legal standard.  What Mesabi presents instead is a disagreement

with the <u>application</u> of the legal standards.  Mesabi seeks a different interpretation of the plain

language of the contracts at issue, which it now believes could not have been rejected unless the

contracts were ambiguous or relevant provisions were ignored.  (Mot. ¶¶ 32-37.)  That is not

sufficient.  In re Physiotherapy, 2017 WL 6524524, at *9 (holding that where the bankruptcy

court's "analysis followed well-established Third Circuit and Supreme Court law," "Defendants'

mere disagreement with the outcome of the Bankruptcy Court's case-specific [legal] analysis is

not a substantial ground for difference of opinion that justifies interlocutory appeal").[5]

28.    This Court recently rejected a similar argument in EMSI Acquisition, Inc. v.

RSUI Indemnity Co., holding that presenting a different interpretation of a contract is not

sufficient to satisfy the § 1292(b) standard calling for a "substantial ground for difference of

opinion" on a "controlling question of law."  No. 16-1046, 2018 WL 2316633, at *3 (D. Del.

May 22, 2018).  Where, like here, "to resolve the question the Court simply applied traditional

contract interpretation principles to the [contracts at issue]," that the parties presented different

interpretations to the court below shows only that "there may be grounds for differences of

opinion" and "[does] not demonstrate[] that those grounds are substantial."  Id. (citing, inter alia,

Fed.-Mogul Corp. v. Ins. Co. of Pa., No. 12-12005, 2015 WL 13037139, at *2 (E.D. Mich. Dec.

22, 2015) (denying request for certification under § 1292(b) where court's "order applied well-

established contract interpretation principles to the insurance policy at issue")).

29.    The particular question in this case—the proper interpretation standards for a

contract under Minnesota law—is not one that presents substantial grounds for a difference of

opinion.  Judge Shannon correctly identified the relevant legal standards of contract

interpretation.  (Op. at 11-16 & n.10.)  And applying those standards to particular language,

Judge Shannon determined the meaning of the contracts at issue, finding that the provisions at

---

[5]    See also accord In re Greenfield Energy Servs., Inc., No. 16-208-LPS, 2017 WL 6524525, at *3 n.2 (D.
Del. Dec. 21, 2017) (rejecting argument by appellants that "there are substantial grounds for different [sic]
of opinion on the application of the correct legal standard" because "[e]ven were the Court to agree with
this contention, it would not render this matter appropriate for interlocutory appeal" (internal quotation
marks omitted)); In re AE Liquidation, 451 B.R. at 348 (finding prong not satisfied where "Plaintiffs
describe the 'competing jurisdictional principles' advocated by themselves and, by contrast, those relied on
by the Bankruptcy Court," holding "Plaintiffs' disagreement with the Bankruptcy Court's conclusions does
not create a substantial ground for difference of opinion").

issue were unambiguous, could be read together, and were not inconsistent, and that the

Settlement Agreement was not overridden by the Approval Order, which was subject to the

terms in the Settlement Agreement, including a failed condition precedent.  (Id. at 11-16 & nn.9,

12-15.)  Judge Shannon also concluded that Mesabi's extra-contractual arguments, like forfeiture,

were inapplicable to this unambiguous contract entered into between sophisticated parties.  (Id.

at 15-16 & nn.15-16.)

30.     If this request for an interlocutory appeal were granted, this Court would apply the

exact same law as Judge Shannon, which is the exact same law that Mesabi presented in its

briefing below.[6]  (See, e.g., [Adv. D.I. 51 & 73].)  The fact that Mesabi presented a different

interpretation of the provisions at issue when applying this law does not mean that summary

judgment was granted on improper legal grounds.[7]

**3.     Mesabi does not seek to materially advance the termination
of the litigation, which would be advanced only by staying the
course that the parties charted:  using Judge Shannon's Opinion
to guide the remaining issues in the adversary proceeding.**

31.     Mesabi argues that allowing an interlocutory appeal will advance the litigation by

avoiding the need for a second trial, presuming Mesabi will win and overturn Judge Shannon's

---

[6]     Mesabi's principal argument—that paragraph 3 of the Approval Order should control over paragraph 2 of
the Approval Order and thus override the terms and conditions of the Settlement Agreement—was rejected
by Judge Shannon, who interpreted his prior Approval Order as "not function[ing] to modify the terms
agreed to by the parties." (Op. at 10 n.9.)  Even if Judge Shannon were wrong on this point—and he is
not—this question would be subject only to review for an abuse of discretion as an interpretation of the
court's own order.  See, e.g., In re Shenango Grp. Inc., 501 F.3d 338, 348 (3d Cir. 2007) (applying abuse of
discretion review and deferring to Bankruptcy Judge's interpretation of its own order, because it was
"directly involved in this lengthy and complex proceeding"); In re Dura Auto. Sys., Inc., No. 09-69-SLR,
2010 WL 180249, at *1 (D. Del. Jan. 19, 2010) (applying Third Circuit's bifurcated approach to determine
whether bankruptcy court's order is ambiguous using de novo review, and upon finding ambiguity,
deferring to bankruptcy court's own interpretation "unless it is unreasonable under the circumstances")
(citing Shenango Grp., 501 F.3d at 346); accord In re Trade Secret, Inc., Nos. 12-854-LPS, 13-291-LPS,
2014 WL 3362322, at *2 (D. Del. July 7, 2014), aff'd sub nom., 609 Fed. App'x 98 (3d Cir. 2015) .

[7]     Contrary to Mesabi's assertions to this Court, there is no "manifestly conflicting language in the applicable
agreements." (Mot. ¶ 33.)  Even if there were, however, that does not present substantial grounds for
difference of opinion where, like here, the court identified and applied the correct legal standard to the
contract language presented in the applicable agreements.  EMSI Acq., 2018 WL 2316633, at *3.

Opinion on appeal.  (Mot. ¶ 38.)  This argument is inconsistent with its own course of conduct, legally flawed, and not sufficient to satisfy § 1292(b).  An interlocutory appeal should not be granted if it "will not advance the overall progress of the [adversary] action, which consists of [additional] claims" unaffected by the appeal.  In re Greenfield Energy, 2017 WL 6524525, at *6 (citing Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) ("Judicial economy does not justify federal jurisdiction.")).  This Court should deny Mesabi's request if it finds "that an interlocutory appeal would only promote piecemeal determination of the questions raised in the adversary action and would likely create unnecessary delay."  In re AE Liquidation, 451 B.R. at 348.

32.      Mesabi's argument that an immediate piecemeal appeal will materially advance the termination of this litigation is inconsistent with its own course of conduct.  The parties brought this issue to Judge Shannon for an early resolution on cross-motions for partial summary judgment, stating that this issue was ripe for resolution and would limit the remaining issues in the case by eliminating several causes of action.[8]  As explained below, infra Sections III.B.4, III.C, if Mesabi wins an interlocutory appeal on its new requested grounds, it will obtain only further litigation concerning its lease rights, which it could again lose (perhaps on different grounds) and then seek to appeal again.

33.      Mesabi also does not explain how allowing this immediate appeal actually would assist the parties in reaching a quicker resolution or provide a more efficient way to proceed.  Allowing the requested interlocutory appeal instead would only insert uncertainty into the case, with the parties having to engage in a debate over whether there should be any discovery allowed on the issues that Judge Shannon's Opinion resolved, or whether the pending appeal should influence a potential settlement or other issues in the case.  (Discovery is about to begin, with the Rule 16 scheduling conference set for September 27, 2018.)

---

[8]      (See, e.g., [Adv. D.I. 51 at 5]; [Adv. D.I. 73 ¶ 24].)

34.     The parties should be allowed to move forward with this case, limited in the manner all parties collectively chose to proceed.  Staying the course, and denying Mesabi's request, is what would materially advance the termination of the litigation, not immediate appeal.

### 4.     Mesabi has not shown that exceptional circumstances warrant granting leave for an interlocutory appeal now.

35.     To establish exceptional circumstances warranting an appeal, this Court requires a would-be-appellant to show "an urgency that sets this case apart from the typical case" or "some circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." Matter of Magic Rests., Inc., 202 B.R. 24, 26 (D. Del. 1996); see also In re AE Liquidation, 451 B.R. at 349 (finding no exceptional circumstances without any "circumstance or reason that distinguishes the case from the procedural norm").  Financial considerations alone are not sufficient.  See, e.g., In re Del. & Hudson Ry. Co., 96 B.R. 469, 473 (D. Del. 1989) (holding "budgetary restrictions" that would limit would-be-appellant's ability to continue litigation "is not an exceptional circumstance justifying departure from the basic policy of postponing review"), aff'd, 884 F.2d 1383 (3d Cir. 1989).

36.     Mesabi asserts that its "prospects for a successful reorganization depend, in substantial part, on the outcome of the Appeal" because it needs a quick, contrary resolution to the dispute over its rights in the Mineral Leases for unstated reasons.  (Mot. ¶¶ 39, 41.)  Mesabi provides no support for how these circumstances qualify as sufficiently "exceptional" to justify granting the extraordinary remedy of an interlocutory appeal in a post-confirmation proceeding.  These assertions are not "exceptional circumstances," and Mesabi's request should be denied.

37.     Far from providing any kind of end, allowing an interlocutory appeal now will only keep the dispute alive for an untold amount of time, the exact problem Mesabi asserts it needs to avoid.  (See Mot. ¶ 41 ("The longer Mesabi's rights in the Mineral Leases remain in

dispute, the more likely it is that Mesabi's reorganization efforts . . . will fail.").)  There are only

two possible outcomes now to Mesabi's hypothetical appeal:  (1) Affirmance, which will confirm

that Mesabi has no rights, or (2) Reversal, which will leave Mesabi's rights uncertain pending

trial (and appeal after final judgment).  Neither protects Mesabi from the parade of horribles it

lays before this Court (each of which is a subject of disputed allegations in the adversary

proceeding).  Obtaining the right to bring this appeal now on an interlocutory basis would not

provide Mesabi with any comfort that its reorganization efforts will succeed.

        38.     More importantly, resolution of the issues raised in Mesabi's Motion cannot affect

its reorganization under Chapter 11 because Mesabi already has gone effective.  Upon

emergence on the Effective Date, Mesabi's reorganization was complete, and there is no longer

an estate for the Bankruptcy Court to administer.[9]  At this point, nine months after the Effective

Date, Mesabi's adversary proceeding is akin to a commercial dispute involving sophisticated

parties' differing interpretations of a contract instead of an issue holding up a debtor's exit from

bankruptcy.  Mesabi accounted for this development, having assigned its claims against the

Cliffs Defendants to itself instead of assigning them to the SC Litigation Trust, leaving these

claims in Mesabi's control and to be pursued for its individual benefit and reasons.  See Bankr.

D.I. 1355-1 ("The Claims [against the Cliffs Defendants] shall not be assigned or transferred to

the SC Litigation Trust, instead they shall vest in Mesabi as of the Effective Date pursuant to the

Plan . . . .").  Any final adjudication on the issues presented on appeal largely will affect Mesabi,

the reorganized debtor, alone as it proceeds post-bankruptcy.

        39.     Moreover, Mesabi's purported "extraordinary circumstances" are completely of its

own making.  Mesabi's choice to raise this issue in this adversary proceeding, through claims

---

[9]     See, e.g., In re Resorts Int'l, Inc., 372 F.3d 154, 165 (3d Cir. 2004) ("At the most literal level, it is
        impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the
        debtor's estate ceases to exist once confirmation has occurred.").

added on the day it emerged from bankruptcy protection and thus completed its reorganization, is

inconsistent with the claimed harm.  If timing were truly a concern, Mesabi could have raised the

issue of its lease rights during its main Bankruptcy Proceeding in a motion for clarification of the

Approval Order.  That motion would have been a discrete contested matter, likely decided much

sooner, and subject to immediate appeal.  Mesabi gambled it would win before Judge Shannon

(or otherwise resolve the issue) and chose a strategy that would insulate a victory from

immediate appeal.  Mesabi now lives with the consequences of its choice.

      **C.**    **Even if Mesabi met the requirements—*and it has not*—leave to appeal should be denied because Mesabi's stated grounds for appeal have been waived.**

     40.    Mesabi's proposed arguments on appeal were never presented below, which alone

should be grounds to deny Mesabi's Motion.  Mesabi's only basis for appeal is that Judge

Shannon's Opinion is wrong, and should be overturned on appeal, because there is "contrary

plain language in the relevant documents" that precluded Judge Shannon from "concluding that

the plain language of the settlement agreement unambiguously favored the [Defendants],

requiring judgment in their favor."  (Mot. ¶ 5; see also, e.g., id. ¶¶ 29-30, 33-37.)  That perceived

error is stated in each of Mesabi's proposed questions presented on appeal.  (Id. ¶ 24.[10])  Mesabi

never presented these arguments to Judge Shannon, however, and should not be allowed to gain

an appeal to present them for the first time to this Court to seek a different outcome.

     41.    Absent exceptional circumstances, "arguments asserted for the first time on

---

[10]    Issue 1:  "Did the Bankruptcy Court err in determining that the language of the Settlement Agreement was <u>unambiguous</u> . . . <u>notwithstanding conflicting language</u> . . . ?";
Issue 2(a):  "Did the Bankruptcy Court err by concluding that the <u>plain language</u> of the Approval Order . . . <u>did not override contrary language</u> in the Settlement Agreement?";
Issue 2(b):  "Did the Bankruptcy Court err by concluding that Section 3(d) of the Settlement Agreement . . . <u>overrode</u> the detailed termination provisions of the Mineral Leases . . . ?";
Issue 2(c):  "Did the Bankruptcy Court err by concluding that Section 4(a) of the Settlement Agreement did not give rise to independent rights . . . <u>despite providing</u> . . . ?; and
Issue 3:  "Did the Bankruptcy Court err by concluding . . . <u>despite reasonable inferences to the contrary</u> . . . ?"  (Mot. ¶ 24 (emphases added).)

appeal are deemed to be waived and consequently are not susceptible to review."  Sanofi-Aventis

U.S., LLC v. Great Am. Lines, Inc., 718 F. App'x 110, 115 (3d Cir. 2017) (internal quotation

marks omitted).  "It is a well-settled rule that a party opposing a summary judgment motion must

inform the trial judge of the reasons, legal or factual, why summary judgment should not be

entered.  If it does not do so, and loses the motion, it cannot raise such reasons on appeal."

Manuel v. NRA Grp. LLC, 722 F. App'x 141, 147 (3d Cir. 2018) (internal quotation marks

omitted).

42.      This rule equally applies to appeals to this Court from the Bankruptcy Court

pursuant to 28 U.S.C. § 158.  See In re Corio, 371 F. App'x 352, 355 (3d Cir. 2010) (affirming

district court's holding that arguments not raised in bankruptcy court are waived on appeal); In re

WL Homes LLC, 476 B.R. 830, 840 (D. Del. 2012), aff'd in part sub nom., 534 F. App'x 165 (3d

Cir. 2013) ("These deposition excerpts were not presented to the Bankruptcy Court, and

therefore the argument is waived on appeal."); In re Yormak, No. 2:17-CV-73-FTM-38, 2017

WL 2645601, at *3 (M.D. Fla. June 19, 2017), appeal dismissed, No. 17-13239-FF, 2017 WL

4857438 (11th Cir. Sept. 13, 2017) (denying motion for leave to appeal in part because issues

were not argued by appellants in bankruptcy court and were waived); see also In re Balser, No.

11-12203-RWZ, 2012 WL 4888530, at *5 (D. Mass. Oct. 15, 2012) ("'[A] party is not at liberty

to articulate arguments for the first time on appeal simply because the general issue was before

the [trial] court.'" (quoting United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992))).

43.      Never in the Bankruptcy Proceeding has Mesabi claimed that the terms of the

Settlement Agreement or the Approval Order are ambiguous.  In reality, Mesabi's entire

argument was premised on the Settlement Agreement's and Approval Order's terms being

**un**ambiguous, a position that Mesabi has maintained from the very beginning.[11]  Mesabi

advanced its position by presenting three lines of argument, outlined below.

  i.   Directly asserting that the Settlement Agreement and Approval Order are unambiguous:

- ▪ "In fact, the Court only needs to look to the unambiguous language of the Settlement Agreement, the Omnibus Lease Amendment, and the Assumption Order to find for Plaintiff on the Subject Counts."  [Adv. D.I. 51 ¶ 25];

- ▪ "The terms of the Assumption Order are clear and unambiguous and no further inquiry into the parties' intent is required or permitted."  [Id. at ¶ 35]; [Adv. D.I. 73 ¶ 89]; and

- ▪ "An unambiguous contract does not require extrinsic evidence to interpret." [Adv. D.I. 82 ¶ 39.]

  ii.   Asserting that specific provisions of the Settlement Agreement or Approval Order are unambiguous:

- ▪ "Here, the wording of Paragraph 3 is clear and unconditional[.]"  [Adv. D.I. 51 ¶ 30]; [Adv. D.I. 73 ¶ 44];

- ▪ "The words of Section 3(e) are plain and unmistakably evince the Parties' intent that the Mineral Leases remain effective through and after the Effective Date . . . ."  [Adv. D.I. 51 ¶ 85]; [Adv. D.I. 73 ¶ 81];

- ▪ "This language is clear and susceptible to only one interpretation: . . . ." [Adv. D.I. 51 ¶ 88]; [Adv. D.I. 73 ¶ 84];

- ▪ "To the contrary, the Court must read Section 4 in that manner because it is exactly what the words of the Settlement Agreement require."  [Adv. D.I. 51 ¶ 92]; and

- ▪ "The plain language of the Settlement Agreement unambiguously provides that Section 4 survives as long as the Settlement Agreement does."  [Adv. D.I. 51 ¶ 94]; [Adv. D.I. 73 ¶ 89.]

  iii.   Advocating that Judge Shannon grant Mesabi's cross-motion for partial summary judgment while also denying each of Cliffs' and GPIOP's cross-motions:[12]

- ▪ "For the reasons that follow, the Cliffs MSJ must be denied.  For the same reasons, the GPIOP MSJ must also be denied and the Mesabi MSJ must be granted."  [Adv. D.I. 73 ¶ 24];

---

[11]   See, e.g., supra ¶ 14 (quoting Jan. 18, 2018 Hr'g Tr. at 17:5-19 [Adv. D.I. 48-1] (arguing "based on this Court's order [the Approval Order], based on the documents that are attached to this Court's order [the Settlement Agreement], and based on the leases themselves this Court can make that determination.")).

[12]   By Mesabi's own words, "Summary judgment on contract claims is appropriate where the language of the contract is unambiguous."  [Adv. D.I. 51 ¶ 23.]

- "[T]he Cliffs Parties' request for summary judgment on the Subject Counts must be denied and summary judgment should enter in Plaintiff's favor on each of the Mesabi [Subject] Counts."  [Adv. D.I. 73 at 40]; and

- "Based on the plain text of the Parties' agreements, and as further set forth herein, GPIOP's motion must be denied and Mesabi's cross-motion granted."  [Adv. D.I. 51 at 5.]

44.      Mesabi cannot now claim ambiguity in the exact same documents that it told Judge Shannon were unambiguous and ripe for judicial interpretation.  Mesabi asserts that an interlocutory appeal is proper because Judge Shannon erred in determining that the Settlement Agreement was unambiguous.  (See Mot. ¶¶ 24, 29.)  Mesabi further argues that "manifestly conflicting language in the applicable agreements preclud[ed] judgment in [the Cliffs Defendants' and GPIOP's] favor as a pure matter of law."  (See id. ¶ 33.)  Mesabi waived these arguments, and it is estopped from taking a diametrically opposed position now.  See Amba v. Rupari Food Servs., Inc., No. 10-4603, 2016 WL 398167 at *1 n.1 (D. N.J. Feb. 1, 2016) (appellant waived argument that contract was ambiguous by not raising it in either round of summary judgment briefing).

45.      Mesabi's waiver dooms its request for interlocutory appeal.  Like the issues involving claim preclusion and parole evidence the district court found waived in In re Yormak, Mesabi waived Issue 1 because this is the first time it has argued that controlling terms are ambiguous.  See 2017 WL 2645601, at *3.  An appeal of Issues 2 (including all subparts) and 3 can succeed only if this Court accepts Mesabi's position that Judge Shannon disregarded "inconsistent provisions" that made those documents ambiguous.  (See Mot. ¶ 33.)  Without an ambiguity argument, Mesabi's position boils down to simple disagreement with Judge Shannon's interpretation of the Settlement Agreement and Approval Order.  As Mesabi admits, disagreement is not grounds for leave to appeal.  (See Mot. ¶ 32); see also In re AE Liquidation,

451 B.R. at 348 ("Plaintiffs' disagreement with the Bankruptcy Court's conclusions does not create a substantial ground for difference of opinion.").

46.    Mesabi waived each of these arguments by not making them in the Bankruptcy Court.  This Court should not allow Mesabi two bites at the apple through leave to argue an entirely new position on appeal.

### IV.    CONCLUSION

47.    Based on the foregoing, the Cliffs Defendants respectfully request that this Court deny Mesabi's Motion.

*[Remainder of page intentionally left blank]*

01:23627823.1

Dated: September 12, 2018          YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Michael S. Neiburg
M. Blake Cleary (No. 3614)
Michael S. Neiburg (No. 5275)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
Email: mbcleary@ycst.com
        mneiburg@ycst.com

-and-

JONES DAY
Robert S. Faxon (pro hac vice pending)
Thomas Wearsch (pro hac vice pending)
Kristin S.M. Morrison (pro hac vice pending)
Adam J. Joines  (pro hac vice pending)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH  44114.1190
Telephone:  +1.216.586.3939
Facsimile:  +1.216.579.0212
E-mail:  rfaxon@jonesday.com
        twearsch@jonesday.com
        kmorrison@jonesday.com
        ajoines@jonesday.com

*Attorneys for Cleveland-Cliffs Inc. and*
*Cleveland-Cliffs Minnesota Land Development LLC*